UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

       Plaintiff,

                      REPORT AND RECOMMENDATION

vs.

Jeremy Lee Neadeau,

       Defendant.                      Crim. 05-198 (MJD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Pretrial Motions of the Defendant:

    1.    The Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions.

    2.    The Defendant's Motion to Dismiss the Indictment on the Grounds that the Court does not have Subject Matter Jurisdiction.

A Hearing on the Motions was conducted on July 13, 2005, at which time, the Defendant appeared personally, and by Peter B. Wold, Esq., and the Government appeared by Clifford P. Wardlaw, Assistant United States Attorney.

For reasons which follow, we recommend that the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions be denied, and that his Motion to Dismiss the Indictment on the Grounds that the Court does not have Subject Matter Jurisdiction also be denied.[1]

## II.  Factual Background

The Defendant is charged with one Count of assault resulting in serious bodily injury, in violation of Title 18 U.S.C. §§113(a)(6), 1151, and 1153.  The alleged violation is said to have occurred on or about February 17, 2005, on the Red Lake Indian Reservation, which is located within the territorial boundaries of this State and District.  As pertinent to the charge, and to the Motions now before us, the operative facts may be briefly summarized.[2]

---

[1] At the close of the Hearing, the parties requested leave to submit post-Hearing memoranda on the legal issues raised by the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions.  Leave was granted, and the last brief on the issues was received on July 27, 2005, at which time, the Motions were taken under advisement.  See, Title 18 U.S.C. §3161(h) (1)(F) and (J); Henderson v. United States, 476 U.S. 321, 330-32 (1986); United States v. Blankenship, 67 F.3d 673, 767-77 (8th Cir. 1995).

[2] Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts

At the Hearing on the Defendant's Motion, the Government presented the testimony of Robert Woldt ("Woldt"), who is a Special Agent with the Federal Bureau of Investigation ("FBI"), and who was involved in the investigation of the events that gave rise to the pending charges.  On May 25, 2005, Woldt received a dispatch from the Police Department for the Red Lake Indian Reservation, which advised him that the Defendant had been arrested, on an outstanding Warrant, during the early morning hours of that day.  Woldt reviewed the arrest report, which revealed that the Defendant was arrested at approximately 3:53 o'clock a.m., and was booked at the Red Lake Police Station just prior to 5:00 o'clock a.m.  Woldt, and two other Agents with the FBI,  Timothy Ball ("Ball"), and Asher Silkey ("Silkey"), then drove to the Red Lake Indian Reservation, in order to transport the Defendant from the Red Lake Police Department to the Clearwater County Jail -- a distance of approximately forty-four (44) miles -- for temporary holding, pending the Defendant's initial appearance on the pending charges.

The Agents arrived at the Red Lake Police Department at approximately 11:25 o'clock a.m., and began to transport of the Defendant shortly thereafter.  All three

---

and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

Agents participated in the transport -- Ball drove the vehicle, Silkey was seated in the front passenger seat, and Woldt was seated in the back seat with the Defendant. The Defendant had been placed in handcuffs, and leg irons, in order to prevent flight.[3]

En route to the Clearwater County Jail, the Agents interviewed the Defendant, during which time, he made statements that the Government intends to introduce at Trial. The interview commenced after Woldt advised the Defendant of his <u>Miranda</u> rights, using the standard issued "Advice of Rights" form. The Defendant asked Woldt if he could stop talking at any time, if he wanted to, and Woldt responded "absolutely." The Defendant stated that he understood his rights, and that he was willing to provide a statement. The Defendant then signed the "Advice of Rights" form, which had been provided to him by Woldt, and the Agents began to question the Defendant. Woldt testified that the Defendant did not appear to be intoxicated, and that he was responsive to the Agents' questions. The interview ended upon their arrival at the Clearwater County Jail.

### III. <u>Discussion</u>

A. <u>The Defendant's Motion to Suppress Confessions and Statements in the Nature of Confessions</u>.

---

[3]The Record does not reflect whether the Defendant's hands were cuffed in front of or behind his back.

1.      Standard of Review.  Government agents are not required to administer Miranda warnings to everyone they question.  See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Stansbury v. California, 511 U.S. 318, 322 (1994), quoting Miranda v. Arizona, supra at 444; United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984).  Once a suspect is in police custody and subject to interrogation, the suspect must be informed of his constitutional right to remain silent, and to be represented by legal counsel during questioning.  See, Miranda v. Arizona, supra at 473; see also, Dormire v. Wilkinson, 249 F.3d 801, 804 (8th Cir. 2001).  "The right to counsel recognized in Miranda is sufficiently important to suspects in criminal investigations, * * * that it 'requir[es] the special protection of the knowing and intelligent waiver standard.'"  Davis v. United States, 512 U.S. 452, 458 (1994); see also, United States v. Ortiz, 315 F.3d 873, 885 (8th Cir. 2002).  Nevertheless, "[i]f the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him."  Id., citing North Carolina v. Butler, 441 U.S. 369, 372-376 (1979); see also, United States v. Jones, 23 F.3d 1307, 1313 (8th Cir. 1994).

Further, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination. See, Dickerson v. United States, 530 U.S. 428, 433-34 (2000). For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has recently explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.] See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a defendant"). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507

U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954). See also, Withrow v. Williams, supra at 693 (listing the applicable considerations). While a Court should consider each of these circumstances, "[c]oercive police activity is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause * * *." Thatsaphone v. Weber, 137 F.3d 1041, 1046-1047 (8th Cir. 1998), quoting Colorado v. Connelly, supra at 167.

        2.     Legal Analysis. The Record demonstrates that the Defendant was advised of his Miranda rights, that he expressed an understanding of those rights, and that he waived his rights, both verbally, and in writing. The Defendant did not appear to the Agents to be intoxicated, and he was responsive to their questioning. Moreover, while the interview was conducted inside of a moving vehicle, and at a time when the Defendant had been placed in handcuffs and leg irons, there is nothing in the Record to suggest that the Agents employed any coercive tactics in eliciting the Defendant's statements. Accordingly, having found that the Agents fully complied

with their obligations, under Miranda, and that the Defendant's statements were not otherwise involuntary, we recommend that the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions be denied.

  B. The Defendant's Motion to Dismiss the Indictment for the Lack of Jurisdiction.

The Defendant argues that the Indictment should be dismissed for lack of jurisdiction, and that our only source of jurisdiction, over crimes on the Red Lake Indian Reservation, arises under the Major Crimes Act ("MCA"), Title 18 U.S.C. §1153, which extends Federal jurisdiction over certain enumerated crimes that are committed on Reservation lands. He contends, however, that the source of authority for the MCA is invalid, and that, absent subject matter jurisdiction, the Indictment must be dismissed in its entirety.

As argued by the Defendant, the source of Congress' power to enact the MCA is twofold: the dependent status of the Indian tribes, see United States v. Kagama, 118 U.S. 375 (1886), and the Indian Commerce Clause. See, United States v. John, 437 U.S. 634 (1978). As to the first identified source of power, the Defendant asserts that any such authority is invalid, as it is paternalistic, and the Red Lake Indian Tribe does not need to depend on the Federal Government for protection as to the crimes enumerated under the MCA. Secondly, he maintains that the crimes listed in the

MCA do not substantially affect Federal Indian Commerce and, as such, under the Supreme Court's ruling in United States v. Lopez, 514 U.S. 549 (1995), Congress lacked the authority to enact the MCA, under the Indian Commerce Clause.

The Supreme Court first addressed the Federal Government's authority, over criminal acts committed on Indian Reservations, in United States v. Kagama, supra. In Kagama, the Court upheld Congress' passage of the precursor to the MCA, and determined that the protection of Indians was a natural obligation arising from the status of Indians as "wards of the nation * * * dependent on the United States."  Id. at 383.  Thus, the Supreme Court has specifically held that Congress had the authority to enact legislation such as the MCA.  Kagama has not been overruled, or otherwise abrogated, to date, and continues to serve as the governing law.

The Defendant takes issue with the Supreme Court's paternalistic view, as expressed in Kagama, and contends that the view is outdated.  As a consequence, the Defendant suggests that the source of Congress' authority in these criminal matters, if any there be, must arise from the Indian Commerce Clause, and he urges that the Indian Commerce Clause did not authorize the MCA's enactment.  In more recent decades, the Courts have recognized that Congressional authority over Indian Reservations does not necessarily flow from any notion of paternalism, nor does it

solely arise from the Indian Commerce Clause.  Rather, the authority arises from the complementary operation of the Indian Commerce Clause, and Article II, Section 2, Clause 2 -- the Treaty Clause -- which are both implemented through the broad mandate of the Necessary and Proper Clause, Article I, Section 8, Clause 18.  See, McClanahan v. Arizona State Tax Commission, 411 U.S. 164, 172 (1973); see also, Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 765 (1985)(recognizing that Congress has "plenary authority over Indian affairs").  As the Court in McClanahan v. Arizona State Tax Commission, supra at 172 n. 7, explained, "[t]he source of federal authority over Indian matters has been the subject of some confusion, but it is now generally recognized that the power derives from federal responsibility for regulating commerce with Indian tribes and for treaty making."

Moreover, as to the Defendant's contention that the MCA is unconstitutional, in view of the Supreme Court's analysis in United States v. Lopez, 514 U.S. 549 (1995), that argument was expressly rejected by the Court of Appeals for the Ninth Circuit, in United States v. Lomayaoma, 86 F.3d 142, 145 (9th Cir. 1996), cert. denied, 519 U.S. 909 (1996).  The Defendant does not identify any flaw in the reasoning of the Lomayaoma decision and, finding the Court's analysis there to be persuasive, we reject the Defendant's notion that the MCA was rendered unconstitutional by Lopez.

See also, <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44 (1996)(reaffirming the principle that Indian commerce is under the exclusive control of the Federal Government, and recognizing that the Indian Commerce Clause confers more extensive power on Congress than does the Interstate Commerce Clause at issue in <u>Lopez</u>).

Therefore, we conclude that, not only because of the Court's holding in <u>Kagama</u>, but also the subsequent holdings with respect to Congress' authority over Indian Reservations, Congress properly exercised its authority in enacting the MCA. Accordingly, we recommend that the Defendant's Motion to Dismiss be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1.   That the Defendant's Motion to Suppress Confessions or Statements in the Nature of Confessions [Docket No. 17] be denied.

2.   That the Defendant's Motion to Dismiss the Indictment on the Grounds that the Court does not Have Subject Matter Jurisdiction [Docket No. 26] be denied.

Dated: August 16, 2005        *s/Raymond L. Erickson*
                              Raymond L. Erickson
                              UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than September 2, 2005**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than September 2, 2005**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.